IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| FABIAN BANTON | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| JOHN MORTON, ET AL. | : | NO. 10-5600 |

**MEMORANDUM**

**Padova, J.**                                                                February 22, 2011

Plaintiff Fabian Banton brings this mandamus action against John Morton, Director of United States Immigration and Customs Enforcement ("ICE"); Thomas Decker, ICE Field Office Director, Philadelphia District; Kent Frederick, Chief Counsel, Office of the Chief Counsel, Philadelphia District; and Thomas G. Snow, Acting Director, Executive Office for Immigration Review (collectively, "the Government"), seeking to compel the Government to return Plaintiff to the United States for the completion of his removal proceedings. Presently before the Court is the Government's Motion to Dismiss. For the reasons that follow, we grant the Motion.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

The Complaint alleges the following facts. Plaintiff is a native and citizen of Jamaica who entered the United States as an agricultural worker on July 15, 1978. (Compl. ¶ 10.) Between 1978 and 1995, Plaintiff resided in Philadelphia. (Id. ¶ 10-11.) ICE initiated deportation proceedings on January 12, 1995, alleging that Plaintiff had been convicted of a drug-trafficking offense in 1991 and a firearms offense in 1993, both in Philadelphia. (Id. ¶¶ 11, 25.) On October 11, 1996, Plaintiff failed to appear for a hearing, and an immigration judge entered an in absentia order of removal against him. (Id. ¶¶ 11, 30.) Plaintiff filed a motion to reopen his deportation proceedings, which

was denied. (Id. ¶ 11.) Plaintiff appealed the denial of his motion to reopen to the Board of Immigration Appeals ("BIA"). (Id.)

While Plaintiff's appeal was pending before the BIA, Plaintiff was deported to Jamaica. (5/5/06 Order, United States Court of Appeals for the Third Circuit, Case No. 05-3946.) The BIA dismissed Plaintiff's pending appeal in an order dated July 22, 2005. (Compl. ¶¶ 2, 12, 31.) Plaintiff appealed to the Third Circuit and the Government filed a motion to remand. (Id. ¶¶ 2, 33.) In an order granting the Government's motion to remand, the Third Circuit held that Plaintiff's deportation prior to the adjudication of his appeal, as well as the BIA's refusal to consider the merits of the in absentia removal order in light of Plaintiff's deportation, violated the automatic stay provisions of 8 U.S.C. §§ 1003.23(b)(4)(iii)(C), 1003.6. (Id.; 5/5/06 Order.)

On remand, the BIA affirmed the in absentia removal order, and Plaintiff appealed. (Id. ¶¶ 12, 13, 34.) On appeal to the Third Circuit, the Government again moved for remand to the BIA, and the Third Circuit granted the motion. (Id. ¶ 13, 34-35; 10/18/07 Order, United States Court of Appeals for the Third Circuit, Case Number 06-5198.) The Third Circuit also denied a motion filed by Plaintiff to compel his return to the United States, "not[ing] the Acting Attorney General's representation that the Department of Homeland Security will permit Petitioner's return to the United States to attend any hearing before an Immigration Judge." (10/18/07 Order.)

On June 13, 2008, the BIA remanded the case to the Immigration Court for further consideration of Plaintiff's deportability. (Compl. ¶¶ 13, 35-36.) Before the Immigration Judge, Plaintiff filed a motion to reset the date of his hearing, in order to allow time for Plaintiff to return to the United States. (Id. ¶¶ 39, 40; see also Motion to Reset Hearing Date, Executive Office for Immigration Review, Office of the Immigration Judge, Case Number A 072-504-689, attached as

Ex. 1 to Defs.' Mem.) In an order dated November 1, 2010, the Immigration Judge granted the motion, but noted that Plaintiff "must pay for transport to U.S." (11/1/10 Order, Executive Office for Immigration Review, Office of the Immigration Judge, Case Number A. 072-504-689, attached as Ex. 2 to Defs.' Mem.)

The Complaint asserts one cause of action against all Defendants. Count I asserts a claim for a writ of mandamus compelling Defendants to return Plaintiff to the United States. The Government has moved to dismiss Plaintiff's claim pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that Plaintiff can identify no authority that imposes on the Government a duty to return Plaintiff to the United States.

## II. LEGAL STANDARD

"In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of Am., 361 F.3d 217, 222 (3d Cir. 2004) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997), and Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). We take the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002)). Legal conclusions, however, receive no deference, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (cited with approval in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed.

R. Civ. P. 8(a)(2), which gives the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (quotation omitted). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). In the end, we will dismiss a complaint if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 1235-36 (3d ed. 2004)).

## III.  DISCUSSION

The contours of Plaintiff's claims have shifted since Plaintiff filed his Complaint in this action. In the Complaint, Plaintiff sought to compel the Government to return him to the United States. (Compl. ¶¶ 1, 4-5, 23, 24, 40-41, 47, 51, 57(e).) In a February 11, 2011 letter to the Court, Plaintiff appeared to request a writ of mandamus compelling the Government to return him to the United States, or, in the alternative, a writ of mandamus compelling the Government to pay the cost of his return. (2/11/11 letter at 1-2.)[1]

It is well-established that "relief is available to a plaintiff under [the Mandamus Act] 'only if he has exhausted all other avenues of relief and only if the defendant owes him a clear,

---

[1]In his Amended Response to the Government's Motion to Dismiss, Plaintiff also appeared to request that the Government communicate with his attorney and provide the documents necessary for Plaintiff to enter the country on his own. (Pl.'s Am. Resp. at 3-4, 7-8.) We take judicial notice of the fact that, at a February 9, 2011 conference in Chambers, the Assistant United States Attorney representing the Government provided to Plaintiff's counsel the contact information for an individual at the United States Department of State who, according to the Assistant United States Attorney, will cooperate with Plaintiff to facilitate his admission into the country upon his arrival.

nondiscretionary duty.'" Harmon Cove Condo. Ass'n, Inc. v. Marsh, 815 F.2d 949, 951 (3d Cir. 1987) (quoting Heckler v. Ringer, 466 U.S. 602, 616 (1984)). The duty owed to the plaintiff must be "legal duty which is a specific, plain ministerial act devoid of the exercise of judgment or discretion." Richardson v. United States, 465 F.2d 844, 849 (3d Cir. 1972) (en banc) (quotation marks omitted). An act is ministerial when it "'is positively commanded and so plainly prescribed as to be free from doubt.'" Appalachian States Low-Level Radioactive Waste Comm'n v. O'Leary, 93 F.3d 103, 112 (3d Cir. 1996) (quoting Harmon Cove, 815 F.2d at 951)).

The Complaint identifies three sources of authority that allegedly impose a "clear, nondiscretionary duty" on the Government to return Plaintiff to the United States. First, the Complaint alleges that the Immigration and Nationality Act ("INA") mandates Plaintiff's presence at deportation proceedings and thus requires the Government to return Plaintiff to the United States. (Compl. ¶¶ 3, 23, 47.) Second, the Complaint appears to allege that the Third Circuit ordered the Government to return Plaintiff to the United States. (Compl. unnumbered ¶ preceding ¶ 1.) Third, the Complaint alleges that Immigration Judge Rosalind Malloy ordered the Government to return Plaintiff to the United States. (Compl. ¶¶ 4-5, 40-41.) In his February 11, 2011 letter, Plaintiff also argues that a provision of the INA dealing with the costs of removal obligates the Government to pay for Plaintiff's return. (2/11/11 Letter at 1-2.) We consider first whether Plaintiff is entitled to a writ of mandamus compelling the Government to return him to the United States and second whether Plaintiff is entitled to a writ of mandamus compelling the Government to pay the cost of his return.

  A. Whether Plaintiff is entitled to a writ of mandamus compelling the Government to return him to the United States

    1. The INA

The Complaint alleges that the INA obligates the Government to return Plaintiff to the United

States. (Compl. ¶¶ 3, 23, 47.) In pertinent part, the INA provides as follows:

> In general, . . . [removal proceedings] may take place – (i) in person, (ii) where agreed to by the parties, in the absence of the alien, (iii) through video conference, or (iv) . . . through telephone conference . . . [unless the proceeding is an evidentiary hearing on the merits, in which case the proceeding] may only be conducted through a telephone conference with the consent of the alien involved after the alien has been advised of the right to proceed in person or through video conference.

8 U.S.C. §§ 1229a(b)(2)(A), (B). The INA further provides that "[i]f it is impracticable by reason of an alien's mental incompetency for the alien to be present at the proceeding, the Attorney General shall prescribe safeguards to protect the rights and privileges of the alien." 8 U.S.C. § 1229a(b)(3). The Complaint alleges that these provisions impose on the Government "the duty to comply with the requirements of the [INA] and return him to the United States so that he has a reasonable opportunity to appear at his deportation hearing." (Compl. ¶ 51.) Plaintiff has identified no authority to support his contention that 8 U.S.C. §§ 1229a(b)(2)(A), (2)(B), (3) impose on the Government a non-discretionary obligation to return to the United States aliens who are deported before the conclusion of their removal proceedings. Because a Mandamus Act claim must rest on a duty that is "positively commanded and so plainly prescribed as to be free from doubt," Richardson, 465 F.2d at 849, and because the Government's obligations under these provisions of the INA with respect to the return of aliens who were removed prior to the completion of their removal proceedings, if any, are not "positively commanded and so plainly prescribed as to be free from doubt," we conclude that Plaintiff has not stated a plausible claim that the INA entitles him to a writ of mandamus compelling the Government to return him to the United States.

   2.   The Third Circuit

The Complaint appears to allege that the Third Circuit ordered the Government to return

Plaintiff to the United States to participate in his removal proceedings. (Compl. unnumbered ¶ preceding ¶ 1.) We may look past the Complaint, and consider the Third Circuit's orders themselves, because the orders are public records. See Lum, 361 F.3d at 222 n.3 ("[A] prior judicial opinion constitutes a public record of which a court may take judicial notice . . . .").[2] Nothing in the Third Circuit's orders obligates the Government to return Plaintiff to the United States. (See 5/5/06 Order; 10/18/07 Order.) To the contrary, the Third Circuit denied Plaintiff's motion to compel his return, "not[ing] the Acting Attorney General's representation that the Department of Homeland Security will permit Petitioner's return to the United States to attend any hearing before an Immigration Judge." (10/18/07 Order.) Accordingly, we conclude that Plaintiff has not stated a plausible claim that the Third Circuit's prior orders entitle him to a writ of mandamus compelling the Government to return him to the United States.

### 3. The Immigration Judge

The Complaint alleges that Immigration Judge Rosalind Malloy ordered the Government to return Plaintiff to the United States to participate in his removal proceedings. (Compl. ¶¶ 4-5, 40-41.) The Government attached Judge Malloy's Order, dated November 1, 2010, to its Motion to Dismiss. We may look past the Complaint, and consider Judge Malloy's Order, because the Complaint explicitly relies upon the Order. See Lum, 361 F.3d at 222 n.3 (establishing that a court

---

[2] In Lum, the Third Circuit went on to state that, on a motion to dismiss, a district court may consider a prior judicial opinion "only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion." Id. Consistent with this limitation, we may "examine the decision to see if it contradicts the complaint's legal conclusions or factual claims." S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd., 181 F.3d 410, 427 (3d Cir. 1999) (citing City of Pittsburgh v. West Penn Power Co., 145 F.3d 256, 259 (3d Cir. 1998), Pension Benefit Guar. Corp., 998 F.2d at 1196, and Romani v. Shearson Lehman Hutton, 929 F.2d 875, 879 & n.3 (1st Cir. 1991)), cited with approval in Mumma v. High Spec, Inc., No. 09-4667, 2010 WL 4386718, at *2 & n.1 (3d Cir. Nov. 5, 2010).

may consider "documents that form the basis of a claim" on a motion to dismiss and holding that "[a] document forms the basis of a claim if the document is . . . 'explicitly relied upon in the complaint'" (quoting In re Burlington Coat Factory Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)); see also Pension Benefit Guar. Corp., 998 F.2d at 1196 ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."). Nothing in Judge Malloy's order obligates the Government to return Plaintiff to the United States. (See 11/1/10 Order.) Accordingly, we conclude that Plaintiff has not stated a plausible claim that Judge Malloy's Order entitles him to a writ of mandamus compelling the Government to return him to the United States.[3]

In sum, we conclude that Plaintiff has not stated a plausible claim that he is entitled to a writ of mandamus compelling the Government to return him to the United States. We therefore grant the Government's Motion to Dismiss insofar as it seeks dismissal of Plaintiff's claim for such a writ.

---

[3] In his Amended Response, Plaintiff suggests that the Immigration Judge hand-wrote on a March 23, 2010 hearing notice, which Plaintiff has not provided, an order that the Government return Plaintiff to the United States. Plaintiff argues that, although "counsel's copy of said document is no longer in the Plaintiff's office file and appears to have been misfiled," we should assume that the March 23, 2010 hearing notice contained such a hand-written order because (1) Plaintiff asserted that it did in a subsequent motion to reset hearing dates filed with the immigration court and the Government did not dispute that assertion in agreeing to a postponement of the proceedings; (2) in the order granting Plaintiff's motion to reset hearing dates, the Immigration Judge inquired as to the status of Plaintiff's return; (3) no Defendant has filed an affidavit specifically denying that the hearing notice contained such an order; and (4) the original hearing notice "has, mysteriously, gone missing from the Court file." (Pl.'s Am. Resp. at 13-16.) We see no merit in these arguments. We merely note that an exchange of letters, which are attached to Plaintiff's Amended Response, demonstrates that the Government sent its copy of the March 23, 2010 hearing notice to Plaintiff on December 6, 2010, and we further note that Plaintiff concedes in his Amended Response that "said notice did not contain the handwritten requirement that [the Government] return Plaintiff to the United States." (See 12/6/10 letter from Richard M. Bernstein to Sandra L. Greene at 1; Pl.'s Am. Resp. at 16.)

B. Whether Plaintiff is entitled to a writ of mandamus compelling the Government to pay for his return to the United States

In his February 11, 2011 letter, Plaintiff appears to request a writ of mandamus compelling the Government to pay the cost of his return to the United States. (2/11/11 letter at 1-2.) Plaintiff argues that a provision of the INA relating to the cost of removal proceedings obligates the Government to pay the cost of his return. The subsection of the INA that Plaintiff identifies provides that, "in the case of an alien who has been admitted or permitted to land and is ordered removed, the cost (if any) of removal of the alien from the port of removal, shall be at the expense of the appropriation for the enforcement of this Act." 8 U.S.C. § 1231(e)(3)(A). Plaintiff argues that the cost of his return falls within the scope of this provision because Plaintiff "is an alien subject to an order of deportation" who will have "permission to land in the United states sufficient to permit his appearance at his deportation proceedings" and who "needs transportation from the port of his deportation, Jamaica, to another destination, the United States." (2/11/11 Letter at 2.)

Plaintiff's argument mis-reads and mis-applies § 1231(e)(3)(A). By its terms, this subsection applies only to "the cost (if any) <u>of removal</u> of the alien <u>from the port of removal</u>." 8 U.S.C. § 1231(e)(3)(A) (emphasis added). In simple words, it provides that, subject to certain exceptions, when the Government removes an alien, it must pay the costs of his removal. It does not impose on the Government a "clear, non-discretionary duty" to pay for an alien's return to the United States. Indeed, having considered the very same request Plaintiff makes here, Immigration Judge Rosalind Malloy ordered that Plaintiff "must pay for transport to U.S." (11/1/10 Order.) Accordingly, we conclude that, even if we considered the Complaint constructively amended to assert a mandamus claim on the basis of 8 U.S.C. § 1231(e)(3)(A), Plaintiff has not stated a plausible claim that the INA

9

entitles him to a writ of mandamus compelling the Government to pay for his return to the United States. We therefore grant the Government's Motion to Dismiss insofar as it seeks dismissal of Plaintiff's claim for such a writ.

IV. **CONCLUSION**

For the reasons stated above, we conclude that Plaintiff has not stated a plausible claim that he is entitled to a writ of mandamus compelling the Government to return him to the United States. We further conclude that Plaintiff has not stated a plausible claim that he is entitled to a writ of mandamus compelling the government to pay the costs of his return. We therefore grant the Government's Motion to Dismiss in its entirety.

An appropriate order follows.

BY THE COURT:


/s/ John R. Padova

_____
John R. Padova, J.